**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

DWIGHT K. SIFFORD,

    Plaintiff,

v.

WARDEN HILTON HALL; ANDRE FORD;
RICKY STONE; DEBORAH STEWART;
PETER BLOODWORTH; JOHN HULETT;
GRADY PERRY; DR. TAM; MS. DAVIS;
GUY AUGUSTIN; AND RICKY TATUM,

    Defendants.

CIVIL ACTION NO.: 5:16-cv-66

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Coffee Correctional Facility in Nicholls, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983 alleging that he has been provided inadequate medical care and challenging the conditions of his confinement. (Doc. 1.) The Court has conducted the requisite frivolity review of that Complaint. For the reasons stated below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against all Defendants. Additionally, I **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND[1]

Plaintiff filed this action against eleven Defendants on August 2, 2016. (Doc. 1.) He alleges that he has received inadequate medical care while incarcerated at Coffee Correctional Facility. Specifically, Plaintiff contends that he suffers from diabetes and cardiac problems, and

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

that various medical professionals have improperly treated these conditions. Plaintiff includes a litany of allegations in his Complaint, (doc. 1), his supporting brief, (doc. 2), and the attachments thereto. The Court has carefully reviewed all of these documents prior to issuing this Report and Recommendation. For the sake of clarity, the Court summarizes Plaintiff's allegations as follows:

- In July of 2013, Plaintiff went one month without "synthroid, metformin, and blood pressure mediation [sic]." (Doc. 1, p. 16.) He filed a grievance regarding his medications on August 6, 2013, and he received his medications two hours later. Id.

- Plaintiff had a heart attack on September 16, 2013. Id. Following his heart attack, Plaintiff was seen by Dr. Tonelone at Tifton Regional, who told Plaintiff that going without his medications in July could have triggered the heart attack. Id. Plaintiff had his heart stent replaced at the hospital, and he returned to Coffee Correctional after staying in the hospital for four days. Id.

- At some point after his heart attack, Plaintiff saw Dr. Giles, a cardiologist in Vidalia, Georgia, who performed an echocardiogram on Plaintiff. Id. Then, on October 29, 2013, Plaintiff was sent to the Mayo Clinic in Waycross, Georgia, where he saw Dr. Walsh. Id. Plaintiff states that officials at Coffee Correctional did not send his medical records to Dr. Giles or the Mayo Clinic. Id. Both Dr. Giles and Dr. Walsh told Plaintiff that he should undergo a "chemical stress test", but the other physicians Plaintiff has seen since those doctors have not performed that test. Id.

- Plaintiff saw Defendant Dr. Augustin several times in 2014 and 2015 for Plaintiff's diabetes and cardiac problems. (Doc. 1, p. 8.) In August of 2014, Plaintiff told Dr. Augustin that he was having heart problems, including an irregular heartbeat. Id.

Plaintiff also told Dr. Augustin that he wanted to see Dr. Giles. Id. However, Dr. Augustin did not refer Plaintiff to Dr. Giles. Id. Rather, Dr. Augustin adjusted Plaintiff's medications. Id.

- Dr. Augustin prescribed Plaintiff the medication Coreg in 2014. Id. However, Dr. Augustin did not check how Coreg would affect Plaintiff's diabetic condition before prescribing the drug. Id. Plaintiff claims that Coreg is an insulin inhibitor and that it caused Plaintiff's daily insulin shots to be useless. (Id. at p. 9.) Thus, Plaintiff contends that Dr. Augustin improperly treated Plaintiff's diabetic and cardiac condition for two years.

- On August 18, 2014, Defendant Dr. Tam, the dentist at Coffee Correctional, saw Plaintiff and extracted two of Plaintiff's teeth. (Id. at pp. 12, 16–17.) The following morning, at 1:00 a.m., Plaintiff was transferred to Wheeler Correctional Facility. Id. Plaintiff requested that he not be transferred because of his medical conditions and his recent dental surgery. Id. However, this request was denied, and Plaintiff was placed on a bus and transferred. Id. After Plaintiff arrived at Wheeler Correctional, he was taken to the medical unit at 5:00 p.m. Originally, the staff at Wheeler's medical unit refused to give Plaintiff his medications and gave him a meal of sandwiches and cookies, both of which are high in sugar. Id. After Plaintiff complained, an official told the nurse to give Plaintiff his insulin and Plavix, and Plaintiff received a hot meal.

- During his transfer, Plaintiff was placed in "box style" handcuffs which were attached to his waist chain. Id. Plaintiff states that, if his heart had given him the "slightest problems" during his transfer, he would not have been able to reach his nitroglycerin

- medication to prevent further problems or a heart attack and that the officers transporting him would not have assisted him. Id.

- Plaintiff's wife called Coffee Correctional to inquire into why Plaintiff had been transferred to Wheeler. (Id. at p. 17.) Warden Perry, the Warden at Coffee Correctional, stated that he did not know that Plaintiff had been moved. Id. Plaintiff's wife then called Mr. Ward of the Department of Corrections, and Mr. Ward had Plaintiff moved back to Coffee Correctional. Id.

- Plaintiff left Wheeler at approximately 8:00 p.m. on August 19, 2014, and was transferred back to Coffee Correctional. Id. Upon arrival at Coffee Correctional, Plaintiff visited the medical unit. Then, he was placed in a cell for twenty-four hours that had no mattress, pillow, sheets, or blanket. Id.

- In April of 2015, Physician Assistant Tatum discontinued Plaintiff's prescription of Lipitor, which a cardiologist had previously prescribed. (Id. at p. 10.) However, Tatum discontinued the prescription without consulting a physician, which Plaintiff contends placed him at a serious risk of injury for several months because prison staff would not place Plaintiff back on Lipitor. (Id. at pp. 10–11.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent

5

standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Section 1983 Official Capacity Monetary Damages Claims

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities, and the Court should **DISMISS** these claims.

## II.     Dismissal of Section 1983 Supervisory Liability Claims

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[2] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendants Hilton Hall (Warden of Coffee Correctional Facility), Peter Bloodworth (Assistant Warden of Coffee Correctional Facility), Andrew Ford (Warden of Care and Treatment at Coffee Correctional Facility), Ricky Stone (Chief of Care and Treatment at Coffee Correctional Facility), Deborah Stewart (Health Services Administrator at Coffee Correctional Facility), John Hulett (Head Registered Nurse at Coffee Correctional Facility), Grady Perry (prior Warden of Coffee Correctional Facility), and Ms. Davis (contract nurse at Coffee Correctional Facility) liable based solely on their positions at the prison. (Doc. 1, pp. 6, 7.) Plaintiff's statement of claims, while lengthy, does not even mention the majority of these Defendants. Moreover, he does not state how any of these Defendants were

---

[2] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

7

personally involved in the denial of his medical care or any of the other violations he claims. Consequently, Plaintiff has not established that these Defendants had any personal involvement in the violation of his constitutional rights or that there is any causal connection between their conduct and the violation. Rather, Plaintiff appears to implicitly rely upon the fact that these Defendants had supervisory authority over the prison or the areas of the prison where he contends his rights were violated. This is an insufficient basis for liability under Section 1983. Thus, the Court should **DISMISS** Plaintiff's claims against Defendants Hill, Bloodworth, Ford, Stone, Stewart, Hulett, Perry, and Davis.

### III. Dismissal of Claims of Deliberate Indifference to Medical Needs Against all Defendants

In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when a defendant shows a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of

9

medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff suffers from serious medical needs. However, he has failed to plausibly allege that any Defendants disregarded those needs with conduct that is more than gross negligence. As Plaintiff's Complaint demonstrates, he has received treatment for both his diabetes and his cardiac problems. However, he disagrees with the modes of that treatment. For example, Plaintiff claims that Dr. Augustin failed to have Plaintiff undergo a chemical stress test, prescribed the medication Coreg which interferes with Plaintiff's medication for diabetes, and refused Plaintiff's request for referral to a cardiologist. These allegations challenge Dr. Augustin's medical judgment but do not establish deliberate indifference. Blanchard, 262 F. App'x at 964 ("Deliberate indifference is not established where an inmate received care but desired different modes of treatment."). Likewise, Plaintiff's claims that Dr. Tam extracted Plaintiff's teeth hours before he was to be transferred and that Physician Assistant Tatum discontinued Plaintiff's prescription of Lipitor take issue with those Defendants' professional judgment and whether they met the standard of care. However, the allegations do not establish that these Defendants disregarded Plaintiff's medical needs.[3]

---

[3] Plaintiff also alleges that he went without his medications in July of 2013, which preceded his heart attack in September of 2013. (Doc. 1, p. 16.) Plaintiff does not allege that any of the named Defendants were actually involved in the failure to provide Plaintiff his medications. Furthermore, any claims based on a denial of medical care in July of 2013 would be untimely. Constitutional claims brought pursuant to

Plaintiff conclusively labels Defendants as "deliberately indifferent" throughout his Complaint. However, using the words "deliberate indifference" does not transform medical malpractice claims into constitutional claims. Rather, the Court must look at Plaintiff's factual allegations. While those allegations may be sufficient to allege negligence, or even gross negligence, they are not sufficient to state a Section 1983 claim. The Supreme Court has emphasized that mere negligence in providing medical treatment or a difference of medical opinion does not give rise to an Eighth Amendment claim, and medical malpractice does not become a constitutional violation simply because the victim is incarcerated. Estelle, 429 U.S. at 106; see also Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) ("Mere negligence, however, is insufficient to establish deliberate indifference."); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient for Eighth Amendment claim); Moore v. McNeil, No. 09-22754-CIV, 2009 WL 7376782, at *5 (S.D. Fla. Dec. 7, 2009), *report and recommendation adopted in part*, No. 09-22754-CIV, 2011 WL 304313 (S.D. Fla. Jan. 28, 2011) ("Treatment violates the Eighth Amendment only if it involves something more than a medical judgment call, an accident, or an inadvertent failure. It must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (quoting Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980), and Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The purpose of the subjective requirement of the deliberate indifference test is "to prevent the constitutionalization of medical

---

Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in federal court in that state. Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Plaintiff signed this lawsuit on July 25, 2016. (Doc. 1, p. 19.) Thus, the two-year statute of limitations based on the July of 2013 denial of medical care passed well before he filed this case.

malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." Rouster v. Cty. of Saginaw, 749 F.3d 437, 446–47 (6th Cir. 2014) (emphasis supplied) (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)); Payne v. Groh, No. CIV. 1:99CV83, 1999 WL 33320439, at *5 (W.D.N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.").

Plaintiff's allegations, even when accepted as true and construed in his favor, simply do not rise to the level of a constitutional violation. Consequently, the Court should **DISMISS** all of Plaintiff's claims of deliberate indifference to medical needs.

### IV.  Dismissal of Conditions of Confinement Claims Against all Defendants

As explained above, the cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832. The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347. Generally speaking, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim," "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society[.]'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337,

349 (1981). However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

Plaintiff alleges that, upon his return from Wheeler Correctional, he was housed in a cell for twenty-four hours that had no mattress, pillow, sheets, or blanket. (Doc. 1, p. 17.) These temporary conditions do not rise to the level of depriving Plaintiff of the minimal civilized measures of life's necessities, even when judged by contemporary standards of decency. Inmates have no absolute right to bedding or clothes under the Eighth Amendment. See Beard v. Strength, No. CV 108-002, 2008 WL 2754094, at *3 (S.D. Ga. July 14, 2008) (rejecting inmate's claim that being forced to sleep directly on the floor during periods of overcrowding violated his Eighth Amendment rights, holding: "[a]lthough Plaintiff may argue that he had an absolute right to bedding, no such right exists.") (citing Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995) ("[T]here is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding;" inmate's four-day confinement in a strip cell did not violate the Eighth Amendment)). Requiring an inmate to sleep on the "bare cement floor" without a mattress for five days during periods of overcrowding does not amount to an Eighth Amendment violation. Fischer v. Ellegood, 238 F. App'x 428, 433 (11th Cir. 2007); see also Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985) ( "fact that [Plaintiff] temporarily had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation"). The insufficiency of Plaintiff's claims is further apparent when considering that these conditions only lasted for twenty-four hours. See McKissick v. Owens, No. CV 312-065, 2013 WL 1213087, at *4 (S.D. Ga. Feb. 21, 2013), *report and recommendation adopted*, No. CV 312-065, 2013 WL 1213076 (S.D. Ga. Mar. 25, 2013) ("limited periods of incarceration in unsanitary conditions are generally

insufficient to evidence an Eighth Amendment violation."). Plaintiff's allegations do not indicate the sort of "extreme" deprivation that a valid conditions of confinement claim demands. Hudson, 503 U.S. at 9.

Likewise, Plaintiff does not plausibly allege that any of the conditions of his confinement during his transfer subjected him to cruel and unusual punishment or that officials were deliberately indifferent to his health or safety. As for Plaintiff's claim that he should not have been restrained while being transferred, when a prison official's conduct "involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously and sadistically for the very purpose of causing harm." Sims v. Mashburn, 25 F.3d 980, 984 (11th Cir. 1994). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Further, Plaintiff does not allege that he suffered any injury as a result of being restrained. Moreover, Plaintiff's allegations regarding the risk that the restraints imposed relies upon conclusory speculations about how Plaintiff thinks the officers would have reacted if Plaintiff had a need for medication.[4]

In any event, Plaintiff fails to connect any of his conditions of confinement claims to any named Defendant. Plaintiff fails to plausibly allege that any of the Defendants took part in Plaintiff's transfer. Indeed, the only mention he makes of any Defendant is that Warden Perry

---

[4] Plaintiff claims that Georgia Department of Corrections' policies forbid the use of box style handcuffs which were used during his transfer. (Doc. 1, p. 13.) However, violation of "rules, regulations, and/or policies, without more, does not give rise to a federal constitutional violation." Mattison v. Williams, No. 5:14-CV-187-OC-29PRL, 2015 WL 476183, at *5 (M.D. Fla. Feb. 5, 2015); Wilkerson v. Bryson, No. 6:16-CV-4, 2016 WL 796127, at *6 (S.D. Ga. Feb. 29, 2016), *report and recommendation adopted*, No. 6:16-CV-4, 2016 WL 1258959 (S.D. Ga. Mar. 28, 2016) (even if [the defendant] violated prison policy . . . that violation does not create a constitutional claim.").

told Plaintiff's wife that Warden Perry did not know Plaintiff had been transferred. (Doc. 1, p. 17.) "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)).

For all of these reasons, the Court should **DISMISS** Plaintiff's claims based on the conditions of his confinement.

**V.      State Law Claims**

"[I]n any civil action of which the district courts have original jurisdiction," district courts also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). "The dismissal of [Plaintiff's] underlying federal question claim does not deprive the court of supplemental jurisdiction over the remaining state law claims." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Instead, pursuant to 28 U.S.C. § 1367(c), "the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the court has dismissed all claims over which it had original jurisdiction, but the court is not required to dismiss the case." Id. "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." Id. at 1353.

While the Court has the discretion to retain jurisdiction over state law claims after dismissal of federal claims, the law cautions against doing so. Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) (In its discretion, the district court may dismiss State law claims after dismissing federal claims; "[m]ore specifically . . . if the federal claims are dismissed prior

15

to trial, [United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966),] strongly encourages or even requires dismissal of state claims.") (quotes and cite omitted); accord Granite State Outdoor Advertising, Inc. v. Cobb Cty., Ga., 193 F. App'x 900, 907 (11th Cir. 2006). When exercising its discretion, the Court takes into consideration that, "state courts, not federal courts, should be the final arbiters of state law." Ingram v. Sch. Bd. of Miami-Dade Cty., 167 F. App'x 107, 108 (11th Cir. 2006); see also Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (internal quotation and citation omitted); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Consequently, to the extent that Plaintiff has brought any state law claims, the Court should decline to retain jurisdiction and **DISMISS** the state law claims **WITHOUT PREJUDICE**.

## VI. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

---

[5] A certificate of appealability is not required in this Section 1983 action.

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's federal claims against all Defendants. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's state law claims **WITHOUT PREJUDICE** and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA